UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF IOWA
DES MOINES DIVISION

| | |
|---|---|
| IN RE:<br><br>VALLEY PORK, LLC,<br><br><br>Debtor. | Case No. 23-01125-lmj11<br><br>Chapter 11 |

DISCLOSURE STATEMENT OF DEBTOR
VALLEY PORK, LLC

Dated: March 22, 2024            RESPECTFULLY SUBMITTED,

/s/ *Robert C. Gainer*
Robert C. Gainer        AT0000305
CUTLER LAW FIRM, P.C.
1307 50th Street
West Des Moines, IA 50266
Tel: 515-223-6600
Fax: 515-223-6787
Email: rgainer@cutlerfirm.com
ATTORNEY FOR DEBTOR

1

**Table of Contents**

I. INTRODUCTION ................................................................................................................. 3
   A. Purpose of This Document ............................................................................................... 3
   B. Disclaimer ........................................................................................................................ 3
II. BACKGROUND .................................................................................................................. 3
   A. Description and History of the Debtor's Business ........................................................... 3
   B. Significant Events During the Bankruptcy Case .............................................................. 5
   C. Projected Recovery of Avoidable Transfers ..................................................................... 6
   D. Claims Objections ............................................................................................................ 6
   E. Current and Historical Financial Conditions .................................................................... 6
III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ................................................................................ 7
   A. What is the Purpose of the Plan of Reorganization? ........................................................ 7
   B. Unclassified Claims .......................................................................................................... 7
   C. Classes of Claims and Equity Interests ............................................................................. 8
   D. Means of Implementing the Plan ...................................................................................... 8
   E. Risk Factors ...................................................................................................................... 9
   F. Executory Contracts and Unexpired Leases ..................................................................... 9
   G. Tax Consequences of Plan ................................................................................................ 9
IV. CONFIRMATION REQUIREMENTS AND PROCEDURES ........................................ 10
   A. Who May Vote or Object ............................................................................................... 10
   B. Votes Necessary to Confirm the Plan ............................................................................. 11
   C. Liquidation Analysis ...................................................................................................... 12
   D. Feasibility ....................................................................................................................... 12
V. EFFECT OF CONFIRMATION OF PLAN ...................................................................... 12
   A. Discharge of Debtors ...................................................................................................... 12
   B. Modification of Plan ....................................................................................................... 12
   C. Final Decree ................................................................................................................... 12

I.  **INTRODUCTION**

This is the Disclosure Statement (the "Disclosure Statement") in the chapter 11 case of Valley Pork LLC. This Disclosure Statement contains information about the Debtor and describes the Plan of Liquidation (the "Plan") filed by Debtors. ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.***

The proposed distributions under the Plan are discussed herein. General unsecured creditors are classified in Class 3, and claims will not receive a distribution.

**A. Purpose of This Document**

This Disclosure Statement describes:

 i. The Debtors and significant events during the bankruptcy case,
 ii. How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),
 iii. Who can vote on or object to the Plan,
 iv. What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
 v. Why Valley Pork LLC believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
 vi. The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights. If you want additional information about the Plan, you should contact:

Cutler Law Firm, P.C., 1307 50th Street, West Des Moines, Iowa 50266

515.233.6600 (voice); 515.223.6787 (fax)

**B. Disclaimer**

**This proposed Disclosure Statement has not been approved by the Bankruptcy Court as containing adequate information under Section 1125(b) of the Bankruptcy Code for use in connection with the solicitation of acceptance or rejections of the Plan of Liquidation described herein. Accordingly, the filing and dissemination of this Plan of Liquidation and Disclosure Statement are not intended to be and should not in any way be construed as a solicitation of votes on the plan. Nor should the information contained herein be relied on for any purpose before a determination by the Bankruptcy Court that this proposed Disclosure Statement contains adequate information**.

II.  **BACKGROUND**

**A. Description and History of the Debtor's Business**
   **1. Company History**

Valley Pork LLC was formed in 2001, by community banker Steven Krogmeier and Patterson Brothers Farms, LC. The business functioned as a wean-to-finish operation, procuring weaned pigs from sow shares from units managed by the Carthage Vet Clinic in Illinois. The operation

3

finished the animals in Eastern Iowa in a mix of contract and owned finishing barns. The operation enjoyed success as evidenced by net worth increasing from $1,390,000.00 in 2009 to $13,200,000 in 2017.  At its peak, Valley was marketing approximately 75,000 animals annually.

Unfortunately, Steven became ill with ALS, which he later succumbed to in 2019.  Before passing, Steven installed a board of directors to oversee Valley Pork.  Before passing, Steve selected Curtis, his son, to manage Valley Pork.  At the member meeting in February 2018, Curtsi Krogmeier was unanimously voted in as manager of Valley Pork.  Pursuant to an offer to all existing members, Steven Krogmeier sold shares to Doug Groth and Keith Baumler; after which, Krogmeier was a minority owner in Valley Pork.  After Steven's passing, relations with the members of Valley Pork broke down, and the non-Krogmeier ownership of Doug Groth, Keith Baumler, and Patterson Brothers Farms, LC, demanded a buy-out, which resulted in the Krogmeier family buying out the existing members interest. .  To fund the buyout, Valley Pork sold its shares in the various Carthage sow units.  To continue feeding pigs, Valley Pork entered into a fixed-price weaned pig agreement with Applewood Farms of Virgina Illinois, LLC (AFOVI).  Shortly after the exit of the minority shareholders, Curtis and Jane Krogmeier (Steve's widow/Curtis' mother) acquired Curtis's siblings share of Valley Pork.  After the buy-outs the resulting ownership structure was 70% Jane Krogmeier 30% Curtis Krogmeier, with Curtis being the manager of Valley Pork.  After the buy-out, a lawsuit was filed by the former members against Valley Pork.

AFOVI was formed in 2013 by Dr. Alan Wildt and two other partners.  At the time of formation, the AFOVI operation was a former distressed farrow-to-finish operation in Cass County, Illinois.  Upon AFOVI's purchase, the operation was converted into a 14,000 head sow farrow-to-wean operation, producing +/- 300,000 weaned pigs annually.   The weaned pigs were sold to various operations such as TriOak Foods, Smithfield, Valley Pork, and other local pork producers.  The operation reported EBITDA of: 2,360,000 (2019), $2,870,000 (2020), and $3,430,000 (2021), respectively, with a net worth of 12,850,000 and an Owner Equity of 88%.

In 2022, Valley Pork entered into a stock purchase agreement in an amount of +/- $21,000,000 as well as three-years of "production bonuses" not to exceed $500,000.00 annually, for the purchase of 100% of the ownership interest of AFOVI by Valley Pork.  Besides real estate, breeder livestock, and weaned pig inventory, other assets included in the agreement were accounts receivable and approximately $2,000,000 cash.  No liabilities aside from accounts payable were assumed by Valley Pork in the purchase.

2. **Business Operations as of Petition Date**

In 2021, Valley Pork sold approximately 117,000 market hogs and reporting making a respectable +/- $2,000,000.  It's reporting indicated Owner's Equity at 64% or +/- $7,000,000 with working capital of $5,200,000.  Valley Pork reported a cost of production of +/- $152 per head marketed.  Valley Pork's low cost of production with adequate working capital contributed to its success.

3. **Events Leading to the Bankruptcy Case**

In 2023, the swine industry suffered an unpresented downturn in margin due to plunging lean hog price, both impacting the sales price of weaned pigs and the hogs sold to packers.    The downturn was caused by dynamic market conditions (plummeting lean hog prices exacerbated

4

with high production costs) coupled with the impact of the United States Supreme Court's ruling that upheld California's Proposition 12.

After Valley Pork purchased AFOVI, it sustained higher production costs compared to historical, which stressed its recently thinned working capital and owner's equity due to the AFOVI stock purchase. Interest rate increases on the debt load caused additional stress on Valley Pork wherein the company was unable to make planned term payments while its operating line of credit was overextended. Thereafter, the owner, Jane Krogmeier, attempted to fund the company with additional contributions, however, the company's depletion of cash was at too high a rate. International conflict had greatly impacted corn prices, and although Valley Pork was heavily hedged in 2022, the price of corn did not see the seasonal decrease at harvest as expected and feed cost jumped by $30/head; which was being paid for on an operating line of credit accruing interest at 9% annually.

In May 2023, Valley Pork removed Curtis Krogmeier as the manager of the company. By action of Valley Pork on June 30, 2023, Robert Klocke volunteered, and was elected as manager and interim President, and filled these roles until his resignation effective July 31, 2023. Thereafter, Jane Krogmeier taking on the role of Manager.

Ultimately, Debtor was presented with the options of turning over its assets to its primary under-secured creditors, or work through a Chapter 11 case to attempt to carve out value for its creditor body as a whole; Debtor chose the later. Given the relief bankruptcy has provided, and an opportunity to work through outstanding issues with secured creditors, Debtor believes it is now the best position to address remaining obligations with a return for certain creditors that did not exist through a state insolvency or Chapter 7 proceeding.

**B. Significant Events During the Bankruptcy Case**
During the Case, the Debtor has managed its financial affairs and taken steps to place itself in a position where it can seek to confirm this Chapter 11 Plan.

1. Debtor filed its voluntary Petition on August 30, 2023, and an Order for Relief was entered on the same day.
2. Debtor hired Cutler Law Firm, as general reorganization counsel;
3. Debtor hired NutriQuest/Casey Westphalen, to serve as its chief reorganization counsel;
4. Debtor hired Agri-Management Farm Services, LLC d/b/a Growthland (hereafter, Growthland) as broker and auctioneer to sell both real estate and ownership interest in an Iowa limited liability company.
5. Debtor reached an accord with its primary secured creditor, Farm Credit Services of America, on a cash collateral order permitting operations and wind-down of the agricultural operation;
6. Debtor participated in Initial Debtor Interview, and First Meeting of Creditors;
7. Debtor effectuated two sales:
    a. Sale of its Real Estate (9 sites) via auction;
    b. Sale of its 100% ownership interest in the member units of Applewood Farms of Virginia, Illinois, LLC, through auction;
8. Debtor hired Frost, CPA, to address tax reporting and filing requirements for tax year 2023;

5

9. The Debtor has filed reports with the United States Trustee, and provided documentation establishing appropriate post-petition insurance, and debtor in possession account.
10. The proposed Combined Disclosure Statement and Plan of Liquidation is the culmination of this effort.

**C. Projected Recovery of Avoidable Transfers**

Any claims, rights and causes of action that the Debtor or its bankruptcy estate may hold against any person or entity, including, without limitation, claims and causes of action arising under section 542, 543, 544, 547, 548, 550 or 553 of the Bankruptcy Code are reserved and preserved for the Liquidating Debtor to pursue. This Plan adopts and preserves the ownership of these claims and lawsuit, and assigns to the Liquidating Debtor all rights and entitlement to prosecution and recovery. Specifically, but without limitation, the following causes of action are, and will continue to be, pursued by the Liquidating Debtor upon Confirmation Order:

(i) Given evaluations on the cost and recovery potential, there exists a present avoidance action against Winthrop Veterinary Clinic, Winthrop, Iowa, Case No. 24-30007, pending in the Bankruptcy Court for the Southern District of Iowa. This cause of action is specifically assigned to the Liquidating Debtor to pursue and recover.

(ii) Derek Smith's obligation via restitution order in Fayette County Iowa District Court Case No. SRCR071712 (hereafter, Restitution Order);

(iii) any recovery actions necessary to marshal, liquidate, and collect on the redemption of the Viafield Stock listed on Schedule B of Debtor's schedules, and any other stock or entitlement the Debtor may possess;

(iv) any recovery actions necessary to marshal, liquidate, and collect on the redemption of the retainer now held at the Laird Law Firm

This list is illustrative, but not limiting, to the actions the Liquidating Debtor will seek to recover on.

**D. Claims Objections**

Except to the extent that a Claim is already allowed pursuant to a Final Order, the Debtor reserves the right to object to Claims. Therefore, even if your Claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your Claim later is upheld. The procedures for resolving Disputed Claims are stated in Article VII of the Plan.
The final numbers for Allowed Claims will depend upon a number of factors, including the Claims adjudication process. It is not believed that the allowance or disallowance of any claims yet to be resolved will have a material impact on the size of the Creditor body or any amounts available for distribution to Allowed General Unsecured Creditors.

**E. Current and Historical Financial Conditions**

The identity and fair market value of the Estate's assets as of the Petition Date and in a hypothetical Chapter 7 liquidation are listed in Exhibit A, which reflects the remaining assets of Debtor after the Court Ordered bankruptcy sales. These assets that conceivably remain for "Recovery":

- Recovery on the Derek Smith Restitution Order- approval from the bankruptcy court will be sought to resolve this matter, to produce $50,000.00 to the Estate/Liquidating Debtor;
- Recovery on the Adversary Proceeding against Winthrop Veterinary Clinic;

6

- Recovery on the Viafield Stock (preferred) and any other ownership interest or cooperative share interest;
- Recovery against Rain & Hail, LLC, on overpayment (+/- $38,246.00);
- Recovery of the Laird Law Firm retainer (+/- $20,000.00);
- Disposition of any remaining assets

(the above "Recovery", collectively, hereafter, Remaining Assets)

All values were based upon the Debtor's best estimates after reasonable investigation and evaluation. Creditors should note that asset values listed as of the Petition Date were based upon the Schedules filed by the Debtor at the inception of its Chapter 11 case. The Debtor believes that the analysis in Exhibit A provides an estimate of the most that Creditors conceivably could receive after liquidation in Chapter 7. Creditors should keep in mind that liquidation in Chapter 7 would involve fees, expenses and costs that will not have to be paid under this Plan including, without limitation, (a) fees for a Chapter 7 Trustee as described in Code § 326, (b) fees for a Chapter 7 Trustee's attorney and other professionals, and (c) taxes on any capital gains. The Debtor's best estimate is that there will not be a dividend for unsecured creditors in a Chapter 7 case, given the security interests of: Farm Credit Services of America, and the presently scheduled priority claim of the Internal Revenue Service.

The Debtor has filed initial financial statements & periodic monthly operating reports (hereafter, MORs) during the pendency of its Chapter 11 case. The MORs are available via the Bankruptcy Court's ECF system. In reviewing those reports, creditors should note that they do not reflect Chapter 7 expenses or other items as described above. As part of the liquidation process, the Debtor seeks to retain current counsel to pursue the Chapter 5 action, recovery on the Restitution Order, marshalling of the Viafield stock and Laird law firm retainer, and make disbursement on the Distribution Date.

## III.   SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A. What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places Allowed Claims and equity interests in various Classes and describes the treatment each Class will receive. The Plan also states whether each Class of Claims or equity interests is Impaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B. Unclassified Claims

Certain types of Claims automatically are entitled to specific treatment under the Code. They are not considered Impaired. Holders of these Claims do not vote on the Plan but may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. Accordingly, the Debtor has not placed the following Claims in any Class:

    **1. Administrative Expenses**

Administrative Expense Claims are costs or expenses of administering the Debtor's Chapter 11 case that are allowed under Code § 507(a)(2). The Debtor estimates that Administrative Expenses in the Case will consist of (i) professional fees of $45,000 to $65,000.00 (net of any

retainer), (ii) any unpaid post-petition expenses associated with the Debtor's Case. It is anticipated the Debtor will pay certain of the approved fees from the funds available in the DIP account, from the recovery on the Remaining Assets.

### 2. Priority Tax Claims

Unsecured Priority Tax Claims are Claims for unsecured income, employment, and other taxes described by Code § 507(a)(8). Sufficient money does not exist to pay the Claim in full, or pay the present value of its Claim, in regular installments paid over a period not exceeding five years from the Petition Date. This shall be paid pro-rata, along with all other Allowed Unsecured Priority Tax Claims, with available funds collected in advance of the Distribution Date. The Allowed Unsecured Priority Tax Claims, and Disputed Priority Tax Claims, have been listed in the Plan.

### 3. United States Trustee's Fees

All such fees due and owing to the United States Trustee, as ordinarily required under 28 U.S.C. § 1930(a)(6)(A), will be made on the Effective Date.

## C. Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### 1. Classes of Priority Unsecured Claims

Certain Claims that are referred to in Code § 507(a) are required to be placed in Classes. In this case, Priority Tax Claims and obligations to state and Federal Taxing agencies. These Claims are required to be paid on a particular schedule under the Code. Pursuant to §1129(a)(9)(C)(iii) of the Bankruptcy Code, unless otherwise agreed by the Holder of a Priority Tax Claim and the Debtors or the Plan Administrator, as applicable, each Holder of an Allowed Priority Tax Claim will receive, at the Distribution Date, its pro-rata entitlement for its Allowed Priority Tax Claim that is due and payable on or before the Effective Date.

### 2. Classes of Secured Claims

Allowed Secured Claims are Claims secured by Estate Property to the extent Allowed as Secured Claims under Code § 506. If the value of the collateral securing Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency may be classified as Unsecured Claim.

### 3. Classes of General Unsecured Claims

Unsecured Claims are not secured by Estate Property and are not entitled to priority under Code § 507(a).

### 4. Class of Equity Interest Holders

Equity interest holders are parties who hold an ownership interest, i.e., equity interest, in the Debtor. Jane Krogmeier owns 70% of the member unit interest in the Debtor; Curtis Krogmeier holds the remaining 30% member unit interest in the Debtor.

## D. Means of Implementing the Plan
### 1. Source of Payments

Payments and distributions under the Plan will be funded by the Debtor's recovery on the identified Remaining Assets. Any and all Causes of Action that are not expressly released or waived under this Combined Disclosure Statement and Plan of Liquidation are reserved and

preserved and vest in the Post-Effective Date Debtor on the Effective Date. No Person may rely on the absence of a specific reference in this Combined Plan and Disclosure Statement or the Plan Supplement to any Cause of Action against it as any indication that the Post-Effective Date Debtor will not pursue any and all available Causes of Action against such Person.

### 2. Payment and Winddown

Upon the Liquidating Debtor reaching the Distribution Date, or as soon as practicable thereafter in the sole reservation of the Liquidating Debtor, payments will be made in accordance with this plan. Thereafter, a final decree will be sought from this Court, along with an Order closing this case. Nothing will preclude the Debtor from making a final payment to the United States Trustee for then remaining, and Distribution Date created, obligation on quarterly fee payments.

### E. Risk Factors

The primary risks under the Plan are that collection on the Restitution Order could be prolonged, and any recovery on the adversary proceeding, Viafield stock, and retainer return, could be below the amount identified. These risks are borne by the priority tax creditors, in that as currently situated, such claims are greater than anticipated recovery.

### F. Executory Contracts and Unexpired Leases

The Plan lists all executory contracts and unexpired leases that the Debtor will assume or reject under the Plan. If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time. If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

### G. Tax Consequences of Plan

The Debtors will not seek a ruling from the Internal Revenue Service prior to the Effective Date with respect to any of the tax aspects of the Plan. EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH HIS/HER/ITS TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES OF THE PLAN. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues the Plan may present to the Debtors. The Plan Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the tax code embodies many complicated rules which make it difficult to completely and accurately state all of the tax implications of any action or transaction.

### 1. Tax Impact on the Debtor

Debtor is an Iowa Company having elected Sub-Chapter "S" taxation status, filing an 1120S. Debtor has outlined that through this Plan of Liquidation, the Debtor anticipates exiting bankruptcy in 2024, and permitting dissolution of it Company with the State of Iowa. No representations are made herein.

### 2. Tax Impact on Creditors

The Debtor is unaware of any adverse tax consequences of the Plan to Creditors or Interest Holders.  It is not necessary or practical to present a detailed explanation of the federal income tax aspects of the Plan or the related bankruptcy tax matters involved in this Chapter 11 case. The tax consequences resulting from the Plan to each individual Creditor should not vary significantly from the past tax consequences realized by each individual Creditor.  To the extent that the tax consequences do vary for individual Creditors, each one is urged to seek advice from his/her/its own counsel or tax advisor with respect to the federal income tax consequences resulting from confirmation of the Plan.

ANY PERSON CONCERNED WITH THE TAX CONSEQUENCES OF THE PLAN IS STRONGLY URGED TO CONSULT WITH HIS/HER/ITS OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS TO DETERMINE HOW THE PLAN MAY AFFECT HIS/HER/ITS FEDERAL, STATE, LOCAL AND FOREIGN TAX LIABILITY.

**IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in Code §1129. These include the requirements that (1) the Plan must be proposed in good faith; (2) that the Plan be fair and equitable, in line with the projected disposable income of the Debtor; (3) the Plan must distribute to each Creditor and equity interest holder at least as much as the Creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the Creditor or equity interest holder votes to accept the Plan; and (4) the Plan must be feasible, and there is a reasonable likelihood of the Debtor being able to make all payments called for in the Plan. These requirements are not the only requirements listed in Code §1129, and they are not the only requirements for confirmation.

**A. Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met. Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A Creditor or equity interest holder has a right to vote for or against the Plan only if that Creditor or equity interest holder has a Claim or equity interest that is both (1) Allowed or Allowed for voting purposes as of the date of any confirmation hearing and (2) Impaired.

### 1. What Is an Allowed Claim or an Allowed Equity Interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

### 2. What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Code, a class is

10

considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. Who is Not Entitled to Vote

The following types of Creditors and equity interest holders are not entitled to vote:
1. Holders of Claims and equity interests that have been disallowed by an order of the Court.
2. Holders of other Claims or equity interests that are not "Allowed Claims" or "Allowed equity interests".
3. Holders of Claims or equity interests in unimpaired Classes.
4. Holders of Claims entitled to priority pursuant to Code §§ 507(a)(2), (a)(3), and (a)(8).
5. Holders of Claims or equity interests in Classes that do not receive or retain any value under the Plan.
6. Holders of Administrative Expense Claims.

Even if you are not entitled to vote on the Plan, you have a right to object to the confirmation of the Plan.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

## B. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by a "cram down" on non-accepting classes.

### 1. Votes Necessary for a Class to Accept the Plan

A Class of Claims accepts the Plan if both of the following occur: (1) the holders of more than one-half of the allowed Claims in the Class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds in dollar amount of the allowed Claims in the Class, who vote, cast their votes to accept the Plan. A Class of equity interests accepts the Plan if the holders of at least two-thirds in amount of the allowed equity interests in the Class, who vote, cast their votes to accept the Plan.

### 2. Treatment of Nonaccepting Classes

Even if one or more Impaired Classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting Classes are treated in the manner prescribed by Code § 1129. A plan that binds non-accepting Classes is commonly referred to as a "cram down" plan. §1129(a)(10) of the Bankruptcy Code shall be satisfied for the purposes of Confirmation by acceptance of the Combined Disclosure Statement and Plan by an Impaired Class of Claims. The Debtor may seek Confirmation of this Combined Disclosure Statement and Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Equity Interests.  Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Equity Interest that is Allowed in an amount greater than zero for voting purposes shall

be considered vacant, deemed eliminated from this Combined Disclosure Statement and Plan for purposes of voting to accept or reject this Combined Disclosure Statement and Plan, and disregarded for purposes of determining whether this Combined Disclosure Statement and Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class. You should consult your own attorney if a "cramdown" confirmation will affect your Claim or equity interest, as the variations on this general rule are numerous and complex.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

### C. Liquidation Analysis
To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. Unsecured Creditors would not receive any recovery given the secured claims of creditors: Farm Credit Services of America, Waukon State Bank. A liquidation analysis is included as <u>Exhibit A.</u>

### D. Feasibility
Bankruptcy Code section 1129(a)(11) requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor (unless such liquidation or reorganization is proposed in the Plan). Because the Plan proposes a liquidation of all of the Debtor's assets, for purposes of this test, the Debtor has analyzed the ability of the Liquidating Debtor to meet its obligations under the Plan. Based on the Debtor's analysis, the Liquidating Debtor will have sufficient assets to accomplish its tasks under the Plan. Therefore, the Debtor believes that the liquidation pursuant to the Plan will meet the feasibility requirements of the Bankruptcy Code.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

## V.    EFFECT OF CONFIRMATION OF PLAN

### A. Discharge of Debtors
Notwithstanding any other provision of the Plan or Confirmation Order, pursuant to section 1141(d)(3) of the Bankruptcy Code, the Debtor will not receive a discharge.

### B. Modification of Plan
The Debtor may modify the Plan at any time before confirmation of the Plan in line with the requirements of Code §1127.

### C. Final Decree
Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor shall file a motion with the Court to obtain a final decree to close the case. Upon all Distribution Date payments clearing, or 90 days, whichever is sooner, the Debtor shall apply for a final decree.

                                            Respectfully Submitted,

Dated: March 22, 2024         BY    */s/ Jane Krogmeier*
                                                        Jane Krogmeier, Manager
                                                        Valley Pork, LLC.

Prepared by:

Robert C. Gainer    AT0000305
CUTLER LAW FIRM, P.C.
1307 50TH Street
West Des Moines, Iowa 50266
Telephone: (515) 223-6600
rgainer@culterfirm.com
ATTORNEY FOR DEBTOR